Betty FOSTER et al *v.* Nelma Jean
SCHMIEDESKAMP, Administratrix, et al

76-214                                        545 S.W. 2d 624

Opinion delivered January 24, 1977
(Division II)

*Rose, Nash, Williamson, Carroll, Clay & Giroir, P.A.*, for appellants.

*Laser, Sharp, Haley, Young & Boswell, P.A.*, for appellees.

ELSIJANE T. ROY, Justice. G. D. Schmiedeskamp died intestate on October 24, 1971, survived by his widow, Nelma Jean Schmiedeskamp (appointed administratrix of his estate), two daughters by a previous marriage, Betty Foster and Judith Reed, both adults, and two daughters by his second marriage, Patricia and Cynthia Schmiedeskamp, both minors.

On February 14, 1974, appellants Betty Foster and Judith Reed filed their petition to remove the administratrix, alleging concealment of assets of the decedent and breach of fiduciary duty in the administration of the estate. The petition asked for removal of Mrs. Schmiedeskamp as administratrix and that her accounts be surcharged for any amounts improperly diverted from the estate.

The probate judge heard the petition and entered an order on April 8, 1976, removing the administratrix and requiring repayment of a $2,000 stud fee owed the estate but denying other claims for relief. Only the other claims are involved in this appeal.

Appellants first contended the court erred in holding that certain bearer bonds in a safe deposit box were held as an estate by the entirety and passed to Nelma Jean Schmiedeskamp individually on the death of her husband.

It is undisputed the deceased and Nelma Jean Schmiedeskamp had an active joint trading account with Raney Securities[1] through which were purchased various municipal bonds in excess of $89,000; that thereafter the bonds were placed in a safe deposit box at Pulaski Heights Bank. The box was leased jointly to the deceased and Nelma Jean Schmiedeskamp. Both parties had a key to the box and full and complete access at all times.

---

[1]The account was carried as follows: "Client: Gilbert D. and Nelma Jean Schmiedeskamp."

Prior to her husband's death, Nelma Jean Schmiedeskamp and her husband worked together and "shared everything together." She testified:

> . . . I was active in every business . . . from the time that we were married. . . . participated in every business that we had.

As to Discount Carpet Center she testified concerning her duties as follows:

> I kept all of the books, I made all of the statements, I sold a little, run all of the errands, just everything that there is to do in a carpet store.

She also testified she was not paid any salary for these duties. After testifying that the safe deposit box was in both names she stated she had a key to the box and removed the bonds, not listing them as part of the contents of the box because she thought they were hers and were not part of the taxable estate. However, after conferring with her attorney she filed an amended estate tax return listing the bonds on that return.

Appellants argue *inter alia* that since there is no explicit writing establishing a tenancy by the entirety, the presumption is against creation of such an estate. However, under Arkansas law where property is conveyed to or purchased by a husband and wife in their joint names with nothing else appearing the property is deemed to be held as an estate by the entirety with the right of survivorship. See *Black* v. *Black*, 199 Ark. 609, 135 S.W. 2d 837 (1940). The words "husband and wife" or "tenants by the entirety" are not necessary to creation of the estate, *Curtis* v. *Patrick*, 237 Ark. 124, 371 S.W. 2d 622 (1963). We upheld the application of this principle in regard to deposits of money in *Dickson* v. *Jonesboro Trust Co.*, 154 Ark. 155, 242 S.W. 57 (1922).

The fact that these bonds were placed in a safe deposit box does not defeat the estate created in them initially. At no time were these bonds ever put out of the control of Mrs. Schmiedeskamp, but to the contrary she could have removed them at any time. Here the totality of the circumstances indicates that the bonds in the safe deposit box were held as an

estate by the entirety. There is no evidence that Mr. Schmiedeskamp asserted individual ownership of the bonds or attempted in any way to have his wife divested of her right of survivorship. See *U.S. v. 339.77 Acres of Land*, 240 F. Supp. 545 (W.D. Ark. 1965).

Appellants make various allegations concerning improper conduct of the administratrix in removing the bonds from the box, but the chancellor heard the testimony, saw the witnesses and determined the issues in favor of appellees, and we cannot say his determination is against the preponderance of the evidence.

Mr. Schmiedeskamp owned a retail business known as Discount Carpet Center and certain race horses. In liquidating the assets of the estate, Mrs. Schmiedeskamp, as administratrix, sold the carpet business as well as these horses.

The eleven horses were appraised by Sam Gray who operated a horse farm. Thereafter repeated unsuccessful attempts were made to sell these horses, with appellants taking part in the efforts to sell them as well as appellees. Eventually a sale was made to the highest bidder, Gray, for $20,-000. A short time later Mrs. Schmiedeskamp repurchased one-half interest in five of these horses under an agreement with Gray that he would continue to train and care for them at his farm for the purpose of entering them in the horse races, and Gray profited approximately $1,000 on Mrs. Schmiedeskamp's repurchase. She testified that her girls liked horses so much that she changed her mind and wanted to have some interest in them.

The Discount Carpet Center was purchased by Mrs. Schmiedeskamp for $95,000 and a short time later resold to her brother-in-law, Ralph Erwin. Since Erwin had no previous experience in this type of business he hired Mrs. Schmiedeskamp under a ten-year contract whereby she agreed to work in the store four days a week for $9,000 per year. A little over a year later Erwin found Mrs. Schmiedeskamp's services unsatisfactory, and he terminated the employment contract through a settlement agreement of $10,000.

Appellants contend these actions evidenced a breach of fiduciary duty by the administratrix, but we cannot agree that repurchasing an interest in the horses indicated bad faith. Neither does the employment contract appear to be merely a device for Mrs. Schmiedeskamp to get money for herself from the sale of the business. It would seem to be a good business practice for Erwin to employ Mrs. Schmiedeskamp to work at the Discount Center because of her experience there, and the fact that the contract later was not satisfactory was only a factor for the court's determination. The sale of the horses and that of the business both were approved by the court prior to December 31, 1971, and this action was not brought until February 24, 1974. The sales were not only approved by the court but no objections were made to the sales until this action was filed. Furthermore, appellants offered no testimony that the sum paid in either sale was inadequate or unreasonable.

The burden is on the party who alleges fraud to prove to the satisfaction of the court that the questioned transaction involved bad faith. *Bush* v. *Bourland*, 206 Ark. 275, 174 S.W. 2d 936 (1943), and *Hopson* v *Buford*, 225 Ark. 482, 283 S.W. 2d 337 (1955). Further, where sales are made with the approval of the probate court, as here, to collaterally attack such orders the fraud must be shown to be extrinsic fraud and not intrinsic fraud. *Cassady* v. *Norris*, 118 Ark. 449, 177 S.W. 10 (1915); *Lambie* v. *W. T. Rawleigh Co.*, 178 Ark. 1019, 14 S.W. 2d 245 (1929). In the case at bar we cannot say the trial court's determination that appellants did not satisfy the required burden of proof on the fraud issue is against the preponderance of the evidence.

After the death of Mr. Schmiedeskamp, Mrs. Schmiedeskamp filed joint state and federal income tax returns in their names for the tax year 1971. Later she received substantial income tax refunds on these returns which she retained as the surviving spouse instead of reporting them as an asset of the estate. Appellants contend the income tax refunds are property of the estate of the deceased. Ark. Stat. Ann. § 62-2131 (Repl. 1971) states:

The survivor of spouses with respect to whom a joint federal income tax return has been filed shall, *upon the*

*death of the other,* be entitled to receive any refund of the tax due from the Internal Revenue Service in his own right upon making proof of the death of the other. (Italics supplied.)

In construing the statute we believe it contemplates the situation where an income tax return is filed while both husband and wife are still living and *thereafter* one of them dies. In such situation the refund rightfully should go to the surviving spouse upon proof of the death of the other. We do not have such a situation presented here since the 1971 return was filed by Mrs. Schmiedeskamp in 1972 after the death of Mr. Schmiedeskamp on October 24, 1971. Although the trial court held Mrs. Schmiedeskamp was entitled to retain the refunds individually the court was not mandated to so find by the terms of the statute. Since the record does not contain sufficient information concerning the proportion of income attributable to each on the 1971 joint return we cannot determine whether the trial court reached the right conclusion on this matter. Therefore, we remand to the trial court on this issue, and affirm on all others.

Affirmed in part, remanded in part.

We agree. Harris, C.J., and Fogleman and Hickman, JJ.