2012 Ark. App. 381

**In the Matter of the RUBY G. OWEN TRUST, fbo Kristian OWEN, Appellant.**

**No. CA 12–10.**

Court of Appeals of Arkansas.

June 13, 2012.

James C. Moser, Jr., Bridges, Young, Matthews & Drake, PLC, Pine Bluff, for Appellant.

ROBERT J. GLADWIN, Judge.

This one-brief appeal arises from the September 21, 2011 order of the Jefferson

County Circuit Court denying Pine Bluff National Bank's (PBNB) petition for modification of a trust. On appeal, PBNB argues that the trial court erred in refusing to consent to the modification of the Ruby G. Owen Trust into a special-needs trust. We affirm.

On February 23, 2009, Ruby Owen created the Ruby G. Owen Trust for the benefit of her nine grandchildren, including her granddaughter, Kristian Owen, a resident of Alaska. The trust allows the trustee to distribute as much income and principal to Kristian as the trustee deems advisable, but it also instructs the trustee to remain mindful of and to always consider other resources available to Kristian. According to the trust, preservation of principal is a priority.

In March 2010, approximately one year after creation of the trust, Kristian was diagnosed with schizophrenia, and a guardian was appointed for her. Ruby Owen, the grantor, died one month later, in April 2010. In June 2011, PBNB, as successor trustee, filed a petition asking the trial court to consent to modification of the trust into a special-needs trust, so that Kristian might qualify for public benefits, reserving the trust assets for assistance not provided by the government.

After a hearing and the consideration of a post hearing brief, the trial court entered an order on September 21, 2011, finding that the requested modification would violate Arkansas public policy forbidding the use of trusts to artificially sequester resources and qualify for government assistance. PBNB filed a notice of appeal on October 19, 2011, and an amended notice of appeal on December 21, 2011, from which this appeal followed.

The exclusive jurisdiction in cases involving trusts, and the construction, interpretation, and operation of trusts are matters within the jurisdiction of the courts of equity, *Winchel v. Craig*, 55 Ark. App. 373, 934 S.W.2d 946 (1996), and courts of equity have inherent and exclusive jurisdiction of all kinds of trusts and trustees. *Id.* Arkansas appellate courts have traditionally reviewed matters that sounded in equity de novo on the record with respect to factual and legal questions. *Hudson v. Kyle*, 365 Ark. 341, 229 S.W.3d 890 (2006). We have stated repeatedly that we would not reverse a finding by a trial court in an equity case unless it was clearly erroneous. *Id.* We have also stated that a finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*

Under Arkansas law, a trust may be modified by written consent of the settlor and the beneficiaries upon a finding that the trust's purposes are not being fulfilled or are being frustrated due to unforeseen circumstances. Ark.Code Ann. § 28–69–401(a) (Repl.2012). If the settlor is deceased, a court can consent to the modification if it finds there is a general benefit to the trust beneficiary and her family. Ark.Code Ann. § 28–69–401(c)(1) (Repl. 2012). Separately, the Arkansas Trust Code empowers a court to modify the terms of a trust if, because of circumstances not anticipated by the settlor, the modification will further the purposes of the trust. Ark.Code Ann. § 28–73–412(a) (Repl.2012). According to comment "a" to the Restatement (Third) of Trusts § 66, this power of modification is known as "equitable deviation." Based on the above-cited authority, PBNB contends that the trial court had the power to consent to the modification of the Ruby G. Owen trust into a special-needs trust.

PBNB argues that pursuant to Arkansas Code Annotated sections 28–69–401 and 28–73–412, the exercise of consent and/or the power of equitable deviation is guided by whether the proposed modification will provide a general family benefit and/or whether the proposed modification furthers the purposes of the trust. In this case, PBNB claims that the trial court disregarded these statutory standards and focused instead on whether the modification could achieve its ultimate purpose of making the trust assets a supplemental, rather than primary, source of benefits for the trust beneficiary. While acknowledging that the modification's legal effectiveness might be put in issue when Kristian, a resident of Alaska, applies for benefits, PBNB argues that it was error for the trial court to give no consideration to the grantor's intent; to deny Kristian the opportunity to enforce a valuable modification; and to usurp the Alaskan government's role in deciding whether the modification should be recognized.[1]

█ PBNB relies upon a factually similar case, *In re Riddell*, 138 Wash.App. 485, 157 P.3d 888 (2007). There, the trustee moved to modify a trust and create a special- or supplemental-needs trust[2] on behalf of a beneficiary who suffered from schizophrenia affective disorder and bipolar disorder. *Id.* The trial court denied the modification, finding, among other things, that it would only permit the family to immunize itself financially from reimbursing the state for the beneficiary's medical care. *Id.* The trustee appealed

the trial court's ruling, and the Washington Court of Appeals reversed. It noted that through the Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, 107 Stat. 312 (1993), Congress authorized special-needs trusts (or supplemental-needs trusts), exempting certain assets from the resources counted for purposes of determining an individual's eligibility for government assistance. *Id.* at 892 (citing 42 U.S.C. § 1396p(d)(4)(A)). Because federal law authorizing special-needs trusts allows disabled persons to receive governmental assistance for their medical care, while reserving extra funds for assistance the government does not provide, the Washington Court of Appeals held that

> the trial court should not have considered any loss to the State in determining whether an equitable deviation is allowed. The law invites, rather than discourages, the creation of special-needs trusts in just this sort of situation. *The proper focus is on the settlor's intent, the changed circumstances, and what is equitable for these beneficiaries.*

*Riddell Testamentary Trust*, 157 P.3d at 893 (emphasis added). PBNB submits that, in this case, the trial court's inquiry should have concentrated on the grantor's intent and whether the grantor would have made the modification, given the unanticipated or changed circumstances presented to the court.

Here, PBNB notes that the trust in question was created by Ruby Owen for the benefit of her granddaughter, and significantly, it provides that the trustee

---

1. PBNB argues for the first time on appeal that Alaska law should govern rather than Arkansas law; accordingly, we decline to address it. *Gillespie v. Gillespie*, 2009 Ark. App. 95, 2009 WL 398215.

2. A supplemental-needs trust is established for a disabled person's benefit and is intended to supplement public benefits without increasing countable assets and resources so as to disqualify the individual from public benefits. *Riddell*, 157 P.3d at 892 (citing Jill S. Gilbert, *Using Trusts in Planning for Disabled Beneficiaries*, 70 Wis. Law. No. 2 (Feb.1997), and *Sullivan v. Cnty. of Suffolk*, 174 F.3d 282, 284 (2d Cir.1999)).

"shall be mindful of, and always consider, the other known resources available to Kristian Owen before making discretionary distributions." It further states Ruby Owen's "desire that preservation of principal be a priority ... and that genuine need be shown by Kristian Owen before my Trustee makes any discretionary distribution." PBNB maintains that these provisions indicate an intention that the trust assets be a *secondary* resource for Kristian, not a primary resource, and that they show that Ruby Owen would have attempted to use Alaska public benefits before invading Kristian's trust corpus.

Because the trust in this case is not self-settled, PBNB does not agree that the Arkansas authorities cited by the trial court would necessarily void the modification it has proposed. But to the extent it is proper to examine the ultimate effectiveness of the proposed modification before considering the grantor's intent and whether there is a general family benefit, PBNB asserts that the trial court should have analyzed the issue using Alaska law, rather than Arkansas law, because that is where Kristian lives and would apply for assistance. PBNB notes that Alaska has enacted statutes governing eligibility for welfare benefits when the claimant is a trust beneficiary. *See* Alaska Admin. Code § 100.600 et seq. The authority includes a specific provision for the use of special-needs trusts. *See* Alaska Admin. Code § 100.612. PBNB acknowledges that it is possible the Alaskan government would deny Kristian's eligibility for benefits, even with the proposed modification, or that it would require further modifications to the trust before granting her eligibility for public benefits. Nevertheless, PBNB maintains that it was error for the trial court to deny the trustee the opportunity to attempt the modification and thereby conserve trust resources. PBNB contends, as the appellate court in *Riddell*

noted, at this stage the proper focus is on Ruby Owen's intent and what is best for Kristian.

The trial court's order specifically states:

The Arkansas General Assembly intended Medicaid assistance programs to supplement other potential sources of payment. Ark.Code Ann. § 20–77–101 (2004). Medicaid is the "payor of last resort [intended] to supplement and not supplant other sources." *Id.* Arkansas also explicitly prohibits grantors from sequestering income from a trust in order to qualify themselves for medical assistance. Ark.Code Ann. § 28–69–102(b) (2004). A catchall provision in § 28–69–102(c) further elaborates that the purpose behind the statute is to prevent individuals from making themselves eligible for "medical assistance benefits ... by creating trusts."

The trial court noted that the Arkansas Supreme Court has previously held that a trust provision that deliberately sequesters funds to qualify a beneficiary for Medicaid is void per public policy. *Thomas v. Ark. Dep't of Human Servs.,* 319 Ark. 782, 894 S.W.2d 584 (1995); *Ark. Dep't of Human Servs. v. Walters,* 315 Ark. 204, 866 S.W.2d 823 (1993). Furthermore, a beneficiary may not qualify for medical assistance when trust funds are available to the applicant. *Thomas,* 319 Ark. at 789, 894 S.W.2d at 588; *Ark. Dep't of Human Servs. v. Donis,* 280 Ark. 169, 655 S.W.2d 452 (1983).

In *Thomas,* the Arkansas Supreme Court considered the trust provision void where it sequestered assets to qualify a beneficiary for Medicaid regardless of whether the beneficiary is also the grantor. *Thomas,* 319 Ark. at 789, 894 S.W.2d at 588. The court considered whether a trust created by an employer for an em-

ployee was a Medicaid qualifying trust. *Id.* The language of the trust stated that the trustee "shall not make expenditures that will disqualify Primary Beneficiary from [government] benefits." *Id.* at 785, 894 S.W.2d at 586. The supreme court voided the trust provisions on grounds that shielding assets to qualify for government benefits violated public policy, stating that "the public policy behind [section 28–69–102] is absolutely beyond dispute—trusts may not be created and used as devices to sequester resources for the purpose of qualifying individuals otherwise ineligible for Medicaid assistance." *Id.* at 789, 894 S.W.2d at 588.

█ |₈In the present case, PBNB sought to modify the trust so that Kristian may qualify for government assistance. As indicated in *Thomas,* even trust provisions that do not expressly impoverish a beneficiary are void when the trust seeks to qualify a beneficiary for government benefits. Because PBNB's intent to modify the trust was to qualify Kristian for "public benefits," and because impoverishing her to qualify for government benefits would render those trust provisions void, the modified trust provisions would be void on public-policy grounds. The fact that the primary purpose for modifying the trust would be defeated was the reason behind the trial court's denial of PBNB's motion to modify the trust.

The trial court found that a beneficiary's mere interest in a trust is enough to render the beneficiary ineligible for Medicaid when trust funds remain accessible. *See Donis,* 280 Ark. at 172, 655 S.W.2d at 454 (citing *McNiff v. Olmsted Cnty. Welfare Dep't,* 287 Minn. 40, 176 N.W.2d 888

(1970)). Our supreme court in *Donis* concluded that savings accounts were accessible to the beneficiaries despite the fact that the beneficiaries had to petition the trial court for access to the account. *Donis,* 280 Ark. at 171, 655 S.W.2d at 453–54. There, the mother of the minor beneficiaries served as conservator of the funds, and although the trial court that controlled her access to the accounts required prior approval, it imposed no limitation on the use of the funds. *Id.* Despite these hurdles to access, the Arkansas Supreme Court determined that the trust funds remained accessible as a resource to be considered under the applicable Arkansas Department of Human Services regulation. *Id.* at 172, 655 S.W.2d at 454. When determining Medicaid eligibility, accessible trust funds can disqualify a beneficiary from government assistance. *Id.*

|₉The trial court considered the cases cited by PBNB from other jurisdictions that allow the type of modification requested, but it was not persuaded that the proposed modification was allowable under current Arkansas law and public policy. Under our standard of review, we are not left with a definite and firm conviction that a mistake has been committed. Accordingly, we affirm.

Affirmed.

ROBBINS and GRUBER, JJ., agree.