2013 Ark. App. 256

**Laura B. ROSE (now Shahsavari), Richard R. Rose, and Michael R. Rose, Beneficiaries of the Rose Family Revocable Trust, Dated January 17, 1994 Appellants**

v.

**Mary Shellnut ROSE, aka Mary Ruth Rose, Appellee.**

No. CA 12–598.

Court of Appeals of Arkansas.

April 17, 2013.

Ball & Stuart, PLLC, by: Laura D. Elkins, for appellants.

Friday, Eldredge & Clark, LLP, Little Rock, by: David D. Wilson and Tory H. Lewis, for appellee.

LARRY D. VAUGHT, Judge.

Laura Rose Shahsavari, Richard Rose, and Michael Rose bring this appeal from the order of the Pulaski County Circuit Court allowing reimbursement to their stepmother, appellee Mary Ruth Shellnut Rose, for expenses incurred in the administration of a trust jointly established by her and their father, Woody Rose. This appeal challenges that ruling, as well as the circuit court's failure to award appellants their attorney's fees. We affirm in part and dismiss in part.

On January 17, 1994, Woody and Ruth Rose created the Rose Family Revocable Trust. The only item placed in the trust was the residence occupied by Woody and Ruth. The trust instrument provided that the trust was modifiable at anytime while both grantors were alive; however, upon the death of either grantor, the trust was to become irrevocable. Upon the death of the second grantor, the residence was to be sold, with three-fifths of the net proceeds to be distributed equally between the appellants, and two-fifths to be distributed between Ruth Rose's two children. In the alternative, if the surviving spouse no longer wanted to live in the residence, he or she could direct the trustee to sell it for fair-market value, with the proceeds being distributed one-fifth to each of the children of the deceased grantor and the remainder being distributed to the surviving grantor. The trust was silent as to the reimbursement of any expenses relating to the residence. There was also a spendthrift provision. Attorney Thomas Stone was appointed to be the trustee, with attorney Patrick Hollingsworth designated to serve as successor trustee.

Over the next several years, the Roses purchased several homes, each of which was subject to a mortgage. Although the homes were titled in Woody and Ruth's names individually for the execution of any mortgage, the residences were always conveyed to the trust. Until 2003, all deeds conveying property to and from the trust identified Thomas Stone as the trustee. Beginning with a deed signed on June 1, 2005, the deeds began identifying Woody and Ruth Rose as the trustees. Stone was never informed that he was being removed as trustee, nor did he ever resign as trustee. The Roses purchased their final

home together on January 13, 2005. This residence was conveyed into the trust by a deed recorded on September 7, 2006.

Woody Rose died unexpectedly on May 31, 2007. Appellee continued to reside in the home following Woody's death. On August 30, 2010, appellee, as trustee, conveyed the residence to herself, individually. She then sold the home to an unrelated third party for |₃$310,000 on September 30, 2010. Appellee deposited the proceeds of the sale in her personal checking account. She retained approximately $90,000 of the proceeds prior to depositing $135,127.17 into the registry of the court pursuant to a November 30, 2010 court order. This represented 60% of the net proceeds from the sale of the residence.

Upon learning of appellee's sale of the home, appellants filed the present lawsuit in early November 2010. In their petition, appellants alleged that the trust was not revoked during Woody's lifetime, and that Thomas Stone had not resigned as trustee. It was alleged that appellee failed to comply with the trust code regarding notice to them following Woody's death. Appellants also asserted that appellee did not have authority to convey the home to herself because it was the only asset of the trust. The petition sought a declaratory judgment, a preliminary injunction, damages, and the imposition of a constructive trust for appellee's breach of her fiduciary duties.

After first filing an answer alleging that the trust was never established, appellee amended her answer and admitted that the trust was established. However, she also asserted that the trust was amended or modified by virtue of handwritten notes, interlineations, and strikethroughs. Appellee denied that Stone was the trustee and contended that she was the current trustee. Appellee sought reimbursement and compensation pursuant to Arkansas Code Annotated section 28-73-709.

The case proceeded to a bench trial held on November 8, 2011. On March 6, 2012, the circuit court entered its written order. In its order, the circuit court found that the |₄attempted amendments to the trust were invalid.[1] After describing the terms of the trust and events following the death of Woody Rose, the court deducted certain expenses and found that appellee had incurred reimbursable expenses on behalf of the trust in the amount of $73,860.47. The court also subtracted $1,000 for the rental value of the residence for the time appellee lived in the house after it was removed from the trust before it was sold, leaving appellee with a net reimbursement of $72,860.47. The court found that each of the appellants was entitled to $30,470.30, and appellee was entitled to $43,716.27 after credit for the amount of the reimbursement and subtraction of the amount she retained from the original proceeds.[2]

Appellants filed a motion for reconsideration on March 9, 2012. The circuit court took no action on the motion, and the motion was deemed denied. This timely appeal followed.

■ The exclusive jurisdiction in cases involving trusts, and the construction, interpretation, and operation of trusts are matters within the jurisdiction of the

---

1. The purported amendments concerned who the beneficiaries were and the amounts to be distributed in the event that the surviving settlor decided to sell the trust property.

2. At the conclusion of the trial, the court allowed the parties fourteen days to submit motions for attorney's fees with supporting documentation. Appellants requested approximately $33,000 in fees, while appellee sought $27,225. By order entered on December 6, 2011, the circuit court denied both fee requests.

courts of equity, *Winchel v. Craig*, 55 Ark. App. 373, 934 S.W.2d 946 (1996), a which have inherent and exclusive jurisdiction of all kinds of trusts and trustees. *Id.* at 377, 934 S.W.2d at 948. Arkansas appellate courts have traditionally reviewed matters that sounded in equity de novo on the record with respect to factual and legal questions. *In re Ruby G. Owen Trust*, 2012 Ark. App. 381, 418 S.W.3d 421. We have stated repeatedly that we would not reverse a finding by a circuit court in an equity case unless it was clearly erroneous. *Id.* at 2, 418 S.W.3d at 422. We have also stated that a finding of fact by a circuit court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* at 2–3, 418 S.W.3d at 422.

We begin by acknowledging that the circuit court's order fails to make specific findings on certain key issues. It also fails to include some of the findings made from the bench. Nevertheless, we find it sufficient for appellate review.

In their first point, appellants argue that the circuit court erred in allowing appellee to be reimbursed for her expenses in maintaining the residence because she was not the trustee; the trust had not been amended prior to Woody Rose's death; and, assuming that appellee was the trustee, she breached her fiduciary duties to the trust. We disagree.

Although the circuit court failed to make a specific finding that appellee was the trustee, such a finding is implicit in the court's order allowing her to be reim-

bursed for her expenses. In awarding appellee expenses, the circuit court was addressing appellee's assertion in her answer that she was the trustee of the trust. This is evidenced by the circuit court's observation from the bench that the settlors (the Roses) reserved to themselves the right to alter or amend the trust while both were alive, and that they acted as trustees for several years prior to Woody Rose's death by buying and selling homes for the trust and having the deeds refer to themselves as the trustees. The court also noted that appellants were aware of the Roses' actions and did not object. It is also undisputed that Thomas Stone knew that he was not the trustee and failed to act as such for several years.

This evidence shows that the Roses were de facto trustees by the time Woody Rose died. A person is a de facto trustee where the person (1) assumed the office of trustee under a color of right or title and (2) exercised the duties of the office. *In re Bankers Trust*, 403 F.2d 16, 20 (7th Cir.1968). A person assumes the position of trustee under color of right or title where the person asserts an authority that was derived from an election or appointment, no matter how irregular the election or appointment might be. *Bankers Trust*, 403 F.2d at 20.[3] Arkansas statutory law allows a settlor to amend a revocable trust by any method manifesting clear and convincing evidence of the settlor's intent. Ark.Code Ann. § 28–73–602(c)(2)(B). As noted above, the Roses bought and sold property from the trust and the deeds listed them as trustees of the trust. Appellee testified that she and her husband decided that they would act

---

**3.** Other jurisdictions have also used the de facto trustee concept. *See, e.g., Creel v. Martin*, 454 So.2d 1350 (Ala.1984); *In re Dakin's Will*, 58 Misc.2d 736, 296 N.Y.S.2d 742 (1968); *In re Trust of Daniel*, 466 P.2d 647 (Okla.1970); *Allen Trust Co. v. Cowlitz Bank*, 210 Or.App. 648, 152 P.3d 974, *clarified by* 212 Or.App. 572, 159 P.3d 319 (2007); *In re Irrevocable Trust of McKean*, 144 Wash.App. 333, 183 P.3d 317 (2008).

as trustees and that was why the deeds listed them as such. Because the evidence demonstrated that the Roses were de facto trustees, we hold that the circuit court's award of trustee expenses to appellee is not clearly erroneous.

Appellants argue that the circuit court's finding that the trust had not been amended precludes the conclusion that appellee was the trustee. However, the circuit court's |₇finding—that the trust had not been amended—was a finding made on the issue of whether appellee and Woody Rose effectively amended the trust to permit the surviving spouse to downsize into a smaller home. The circuit court's award of trustee expenses was a separate issue that was resolved by the court in favor of appellee.

Appellee, as trustee, undisputedly had the power to incur these expenses in order to maintain the various residences. The trust instrument gave the trustee all the powers specified in Act 153 of 1961, codified at Arkansas Code Annotated sections 28–69–301 through 28–69–304 (Repl.2012). Section 28–69–304 allows a trustee to, among other things, pay real-estate taxes and other assessments on the property, to repair and maintain the real property, and to insure the property. Ark.Code Ann. § 28–69–304(14), (15), (24); see also First Nat'l Bank v. Hawley, 207 Ark. 587, 182 S.W.2d 194 (1944) (stating the general rule that a trustee has the implied power to maintain trust property to prevent it from going to waste).

This brings us to the question of whether reimbursement of these expenses was proper.⁴ Appellants contend that no re-

imbursement was possible because the trust instrument was silent on the issue. However, a trustee is generally entitled to reimbursement for expenses incurred reasonably and properly in the course of administering a trust. Restatement (Third) of Trusts, § 38(2) (2003). This is true even in the absence of an express provision for |₈reimbursement in the trust instrument. Stewart v. Harrison, 210 Miss. 750, 50 So.2d 624 (.1951); Johnston v. Rothwell, 54 Wyo. 99, 87 P.2d 13 (1939). Arkansas statutory law provides explicitly for this right, mandating that "a trustee is entitled to be reimbursed out of the trust properly . . . for reasonable expenses that were properly incurred in the administration of the trust[.]" Ark.Code Ann. § 28–73–709(a)(1). Based on the evidence and our de novo review, we hold that the circuit court was not clearly erroneous in awarding appellee these expenses.

■ Appellants also argue that appellee was not entitled to any reimbursement because she breached her fiduciary duties by, among other things, commingling the proceeds from the sale of the residence with her personal funds and failing to comply with statutory requirements regarding notice. We note that the court's written order does not contain a specific ruling on whether appellee breached her fiduciary duties to the trust. However, even if the circuit court had found that appellee had breached her fiduciary duties, the court would nevertheless have the discretion to allow reimbursement to appellee. See Ark.Code Ann. § 28–73–709(a)(2).⁵ Based

4. Appellee's Exhibit 8 shows the expenses for which reimbursement was claimed. They included mortgage payments, property owners' association assessments, homeowner's insurance, and property taxes totaling $47,928.89. There were also charges included for an alarm system, a home warranty, a pest-control service, and various repairs that included

electrical and plumbing charges. Appellants do not challenge the amount of expenses incurred, only whether there was authority for reimbursement of those expenses.

5. Section 28–73–709(a)(2) provides that a trustee is entitled to reimbursement for expenses that were not properly incurred in the

on the evidence in this case, we hold that the circuit court did not abuse its discretion.

 Appellants further argue under this point that the circuit court erred by allowing reimbursement for expenses that were incurred prior to the death of Woody Rose. However, this argument is not preserved for our review. After both parties rested, the court and counsel engaged in a colloquy as to what the appropriate relief would be. Appellants' attorney noted that appellee's Exhibit 8 contained expenses incurred prior to the death of Woody Rose. The court was thus aware of appellants' claim that there were expenses incurred prior to Woody Rose's death when it used Exhibit 8 to determine the amount for which she would be reimbursed. Appellants did not object. A contemporaneous objection is necessary in order to preserve an issue for appellate review. *Berry v. St. Paul Fire & Marine Ins. Co.*, 328 Ark. 553, 944 S.W.2d 838 (1997). It was not until appellants filed their posttrial motion for reconsideration that they specifically raised the issue. It is well settled that our appellate courts will not consider an argument made for the first time in a posttrial motion. *See Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002); *Wal–Mart Stores, Inc. v. Lee*, 348 Ark. 707, 74 S.W.3d 634 (2002).

 Next, appellants argue that the circuit court erred in failing to award their attorney's fees. However, this argument is not preserved for review because appellants did not file an effective notice of appeal from the order denying fees. Whether an appellant has filed an effective notice of appeal is always an issue before the appellate court, and absent an effective notice of appeal, this court lacks jurisdiction to consider the appeal and must dismiss it. *See Lindsey v. Green*, 2010 Ark. 118, 369 S.W.3d 1.

At the conclusion of the trial, the circuit court took the fee issue under advisement and gave each party fourteen days to file their petition and supporting documents. On December 6, 2011, the court entered an order denying attorney's fees to either party. After entry of the court's final order and the deemed denial of their motion for reconsideration, appellants filed a notice of appeal on April 24, 2012. The notice stated that appellants were appealing from the final order and the deemed denial of their motion for reconsideration, as well as from all rulings that shaped the final order. Appellants did not, however, mention the order denying their motion for attorney's fees in their notice of appeal.

Rule 3(e) of the Rules of Appellate Procedure–Civil provides that a notice of appeal shall, among other things, "designate the judgment, decree, order, or part thereof appealed from." Ark. R.App. P.-Civ. 3(e). A notice of appeal must therefore designate the judgment or order appealed from, and an order not mentioned in the notice of appeal is not properly before an appellate court. *See Lindsey*, 2010 Ark. 118, at 13, 369 S.W.3d at 8; *Wright v. State*, 359 Ark. 418, 198 S.W.3d 537 (2004).

Appellants invoked Rule 2(b) of the Rules of Appellate Procedure–Civil, which provides that an appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment, by stating in their notice of appeal that they were also appealing from all of the circuit court's rulings that shaped the judgment. We find the rule inapplicable in this case, however, because while the order on attorney's fees is intermediate in the sense that

administration of the trust to the extent necessary to prevent unjust enrichment of the trust.

it was entered before the final decision on the merits of the case, the fee issue is not the object of the underlying suit. *See Ford Motor Co. v. Harper*, 353 Ark. 328, 107 S.W.3d 168 (2003); *In re Estate of Reimer*, 2010 Ark. App. 41, 2010 WL 132348. Our supreme court has consistently held that the award of attorney's fees is a collateral matter. As a result, the order denying the motion for fees is not an intermediate order that would be brought up under the provisions of Rule 2(b). Accordingly, appellants' attorney's-fees issue is not preserved for our review.

Affirmed in part; dismissed in part.

PITTMAN, GRUBER, WHITEAKER, and WOOD, JJ., agree.

HARRISON, J., dissents.

BRANDON J. HARRISON, Judge, dissenting.

I respectfully dissent from the majority's opinion. I primarily disagree with its decision to read four material rulings into the circuit court's final order: (1) that Ruth and Woody Rose became de facto trustees before Woody's death and while the trust was still revocable; (2) that Thomas Stone ceased being a trustee (at some unstated point in time); (3) that Ruth was some sort of trustee when the house was sold; and (4) that Ruth did not breach any fiduciary duty—and even if the circuit court had found that she did, then it would have reimbursed her just as it did in the final order. I also disagree with the majority's conclusion that the Rose children did not preserve an attorney's-fee denial for review.

We should be reversing the circuit court's order and remanding this case for further proceedings.

**1. The Trustee/Trust Modification Issue.** As the Rose children argued in their timely postjudgment motion that was deemed denied and expressly named in their notice of appeal, the circuit court's order does not expressly find that Rose was the sole trustee or a co-trustee. Instead, the order only refers to Ruth individually, as a beneficiary, as the sole beneficiary, a co-beneficiary, and a co-grantor. The majority therefore infers, based on the reimbursements given to Ruth, that the court found that Ruth was at least a co-trustee.

The circuit court's (and majority's) arguable decision to treat Ruth as some sort of trustee raises the related question of how this is done if, as the circuit court also expressly found, the trust's original terms were never modified. "The evidence of attempted amendments or revisions to Trust before the death of Mr. Rose was insufficient to alter the terms of the Trust." Contrary to the majority's narrow reading, the circuit court's sweeping statement that the trust was never amended or revised is not limited to a house-downsizing issue.

If the circuit court found that Ruth was a trustee, as the majority believes happened, then the court necessarily modified the trust. The children's complaint expressly alleged that Ruth was not a trustee and it asked the circuit court to declare

- that the trustee of the Trust is Thomas S. Stone;

- that Defendant Mary Shellnut Rose AKA Mary Ruth Rose is not the trustee of the Trust.

Under direct examination of Ruth's attorney, the children's attorney objected to the notion that Woody and Ruth Rose modified the trust

COUNSEL FOR ROSE: And I would ask you, is this a trust that you and Woody had Tom Stone draft for you?

MRS. ROSE: That's correct.

COUNSEL FOR ROSE: And are there some markings made on this trust, some revisions made to this trust?

MRS. ROSE: Yes.

COUNSEL FOR ROSE: [I]'d move to introduce Defendant's Exhibit 1 [the trust document with markings].

COUNSEL FOR THE CHILDREN: [W]e do object to that because those contain extraneous markings. There's no explanation of what those are, how they got there. It is apparent that those markings are insufficient to amount to any modification or amendment to the trust. They're inconsistent with the terms of the trust itself as to how modifications would be made.

COUNSEL FOR ROSE: We're about to explain the modifications and how they were made.

The circuit court overruled the objection and admitted a marked-up copy of the trust. Then came these exchanges on the "Rose was trustee" issue during trial

COUNSEL FOR ROSE: Was there a time when you and Woody decided that you would be co-trustees and that Tom Stone would no longer be trustee?

MRS. ROSE: That's correct.

COUNSEL FOR ROSE: Tell us about that.

. . . .

COUNSEL FOR THE CHILDREN: Your Honor, I ,object to that. That document speaks for itself, and there's been no indication of any modification of the document.

COUNSEL FOR ROSE: [S]o I wanted to ask you, was there a time when you and Woody decided that you would serve as co-trustees and not Tom Stone?

COUNSEL FOR THE CHILDREN: Your Honor, once again, we'd object. There's been no showing of a modification to the trust. There's been no showing of any ambiguity in the trust. Before they start getting into modifications and changes, it's required that there be an ambiguity in order to get to their intent.

COUNSEL FOR ROSE: [A]nd if Tom Stone, as trustee, before that time was monitoring the property and in control of the properly as a trustee, would these written documents filed of public record regarding the property have been written notice to him.

COUNSEL FOR THE CHILDREN: Your Honor, I object to that. That calls for a legal conclusion.

THE COURT: I'll sustain the objection.

A harmonious reading of the final order and the testimony establishes that the circuit court's finding that no revisions or amendments were made to the trust is not as narrow as the majority says.

Next, in their motion asking the circuit court to alter or amend its final order, the Rose children continued to argue their pleading-based and trial-based point that Ruth could not have served as a trustee—unless the trust had been modified, and it wasn't modified; the court so found. "If the Court is recognizing [Ruth Rose] as the trustee, it is making an amendment to the trust. To that end, based on the undisputed facts including her own testimony at trial, [Ruth Rose] unquestionably breached nearly every fiduciary duty owed by a trustee by conveying the house to herself."

The parties persistently argued over whether Ruth became a trustee and whether doing so would have required a trust modification. The unambiguous words of the written order state that the trust was not amended. This means that the two trustee-related provisions in the trust were never changed

- "The Trustee of this trust shall be Thomas S. Stone." Section 1. 1(a)

• "Upon the death or resignation of Thomas S. Stone as Trustee, Patrick E. Hollingsworth shall serve as successor Trustee." Section 1. 1(b)

In its opinion, the majority holds that a person may become an acting co-trustee or sole trustee if she simply acts as one—although the trust itself expressly names a different acting trustee, names a different successor trustee, and has never been modified or amended in any legally effective way. In fact, the circuit court never found whether Ruth became a trustee before or after her husband's death.

The majority has found as fact, in the first instance, that Ruth and Woody Rose became co-trustees before Woody died. The majority finds this fact too: "It is also undisputed that Thomas Stone knew that he was not the trustee and failed to act as such for several years." Not only did the circuit court never find such a thing, the record does not support the statement that Stone "undisputed[ly]" knew that he was not the trustee. Here is some of Stone's testimony on the trustee issue

COUNSEL FOR THE CHILDREN: And you were the trustee of that trust?

STONE: Yes.

COUNSEL FOR THE CHILDREN: And did you accept the trustee of that trust?

STONE: Yes, I did.

. . . .

COUNSEL FOR THE CHILDREN: [D]id you ever prepare any amendments to that trust?

STONE: No, sir.

COUNSEL FOR THE CHILDREN: Did you ever resign as trustee of that trust?

STONE: No, sir.

COUNSEL FOR THE CHILDREN: Did you ever receive any written notification that you had been removed as trustee?

STONE: No, sir.

COUNSEL FOR THE CHILDREN: Did you ever receive any written notification of an amendment to the trust?

STONE: No, sir.

The circuit court never made any express credibility determination that discounted Stone's testimony; nor did it specifically find that Stone had effectively resigned or been removed as the sole trustee.

The majority cites an Arkansas statute, and cases from the Seventh Circuit and other jurisdictions outside Arkansas, to support its holding that the circuit court implicitly found that Ruth was a de facto trustee. I grant that an Arkansas statute allows a settlor to amend a revocable trust in accord with the statute and upon clear-and-convincing evidence. But we have no finding from the circuit court (based on clear-and-convincing evidence or any other standard) that an amendment to a revocable trust occurred. We do have the opposite situation, which is an express ruling by the circuit court that the trust was not "amend[ed] or revis[ed]" before or after Woody's death. Further, a plain reading of the trust's section 2.2 suggests that Ruth could not have modified the trust once it became irrevocable upon Woody Rose's death.

We should remand the case to the circuit court and ask it to explain in some detail whether it in fact found that Ruth was some sort of trustee. If the answer is yes, then it should also state when she became a trustee and whether she was a co-trustee or the sole trustee (or some combination of the two over time). Finally, if the circuit court was to expressly find that Ruth was some sort of trustee, then it should explain how, given the facts and Arkansas law, she could do so without having to modify the trust in some manner, which the court expressly found never happened.

**2. The Fiduciary Claim.** If Ruth was a trustee, and the circuit court ruled that there was no breach of any fiduciary duty, then it clearly erred. Here is Ruth Rose, on direct examination by her lawyer, providing a textbook example of a breach of one or more fiduciary duties

> COUNSEL FOR ROSE: [W]hat did you do with that cash [the house-sale proceeds] when you received it?
>
> MRS. ROSE: Put it in the account.
>
> COUNSEL FOR ROSE: What account is that?
>
> MRS. ROSE: Just my account.
>
> COUNSEL FOR ROSE: Your personal account?
>
> MRS. ROSE: Yes.
>
> COUNSEL FOR ROSE: Did you notify anybody else who was a beneficiary of the trust of your intent to sell the property?
>
> MRS. ROSE: No.
>
> COUNSEL FOR ROSE: Did you notify Tom Stone?
>
> MRS. ROSE: No.
>
> . . . .
>
> COUNSEL FOR ROSE: You didn't intend to distribute any money to them [Woody's children], did you?
>
> MRS. ROSE: Not till death.
>
> COUNSEL FOR ROSE: Not till death, but the house was in your name, correct— I mean, the funds were in your individual name?
>
> MRS. ROSE: Right.
>
> . . . .
>
> COUNSEL FOR ROSE: [W]hat was your understanding of what you could do with the principal of the trust at that time?
>
> MRS. ROSE: That I could—because the house was the only thing that was in the trust, so that I could then sell it, deed it to me, and then sell it.

> COUNSEL FOR ROSE: You thought you could distribute it out of the trust?
>
> MRS. ROSE: Distribute it out. That's the word I was trying to—
>
> COUNSEL FOR ROSE: To you individually?
>
> MRS. ROSE: Right.
>
> COUNSEL FOR ROSE: And then do what you wanted with it individually?
>
> MRS. ROSE: Yes.
>
> Counsel for Rose: And then under 2.2, I guess the other option, what did you think you could do with the property? Let me ask the question again. You said under 2.1, you thought you could distribute it out to yourself—
>
> MRS. ROSE: Distribute it out to me.
>
> COUNSEL FOR ROSE:—individually. Or under 2.2, did you—were there any other options you could—
>
> MRS. ROSE: That I could amend, modify it.
>
> COUNSEL FOR ROSE: Well, what I'm asking about is the phrase that says you could ask the trustee to sell it for not less than fair market value?
>
> MRS. ROSE: Yes. . . . And I—since I am the—I was the trustee.

Ruth's testimony about her breach was consistent under cross-examination by the children's lawyer

> COUNSEL FOR THE CHILDREN: After you sold the residence, you had just deposited those funds in your personal checking account, correct?
>
> MRS. ROSE: That's correct.
>
> COUNSEL FOR THE CHILDREN: You did not establish a separate account to hold those?
>
> MRS. ROSE: Not as soon as it happened, no.

Ruth's testimony establishes a breach of section 2.2, a core part of the irrevocable trust, which states

After the death of either of the Grantors, the surviving Grantor may not amend, modify, or revoke this trust, except that upon prior notice to the Trustee, such surviving Grantor may direct the Trustee to sell the trust assets for not less than the fair market value and pay one-fifth of the proceeds to each of the deceased party's children identified in paragraph 1.2 hereof and pay the remainder to the surviving Grantor.

Ruth could not self-deal and otherwise act directly contrary to the trust's plain terms and her co-beneficiaries' interest. *Hosey v. Burgess,* 319 Ark. 183, 191–92, 890 S.W.2d 262, 266–67 (1995); *Hardy v. Hardy,* 222 Ark. 932, 940, 263 S.W.2d 690, 694 (1954) (a breach of trust may exist even where the trustee acted in good faith). Given Arkansas law and this record, I would reverse the circuit court's order and direct it to make specific findings of fact regarding the trustee issue. If she was a trustee, then the court should make findings of fact on which fiduciary duty or duties Ruth breached and then craft an appropriate remedy.

**3. The Reimbursement Issue.** The majority's finding that Ruth was a trustee is important because without it she would have not been entitled to reimbursement. The majority's contention that the children's argument about reimbursement amounts is not preserved is mistaken. Reimbursement was an issue during the trial, and it was consistently tethered to the trustee/trust modification point. Contrary to the majority's specific assertion about Exhibit 8, the Rose children objected to Ruth's attempt to introduce Exhibit 8 into evidence.

COUNSEL FOR ROSE: [W]e'd move to admit Defendant's Exhibit 8.

COUNSEL FOR THE CHILDREN: Your Honor, I object to Defendant's 8. There's improper foundation for it. There's no showing the time when these particular expenses were made or particularly where the funds came from, whether they were before or after the death. There's no showing what those items were expended for in terms of how they benefited the trust, whether they were an additional contribution to the trust, or whether they increased the value of the property, if any. They're just living expenses.

After the exhibit was admitted over the children's objection, their lawyer cross-examined Ruth on its contents, including costs that she incurred while living in the home. And when it appeared to the children's attorney as the trial wound up that the court was seriously considering a ruling that Ruth had acted as some sort of trustee, counsel argued again that Ruth could not be reimbursed because she "very blatantly" disregarded her fiduciary duties and violated the trust's material terms. The children's counsel also argued that Ruth was not entitled to reimbursement of living expenses even if she was deemed a co-trustee. The Rose children clearly raised and properly preserved their argument that the court had improperly awarded Ruth more than $72,000 in reimbursements in trustee-related expenses.

If Ruth was some sort of trustee, then the majority stopped short of addressing the reimbursement issue given her breach of one or more fiduciary duties: "Moreover, if the circuit court had found that [Ruth Rose] had breached her fiduciary duties, the [circuit court] would nevertheless have the discretion to allow reimbursement to [Ruth Rose]," says the majority. My point here is that I will not presume, as the majority has done, that the circuit court would have allowed any reimbursement (much less the precise combination of items) had it found that Ruth breached one or more fiduciary

duties. It is not our place to presume what would have happened had the circuit court made a wholly different decision on a party's substantive claim.

I do not seek to dictate a remedy as the majority has essentially done. That is why I would reverse the order and remand the case to the circuit court.

**4. The Attorney's Fee claim.** Regarding the majority's holding that the Rose children failed to properly appeal the circuit court's denial of their November 2011 request for an attorney's fee, I see things differently. I believe the attorney's fee issue was, on the record as a whole, bound up enough with this case's merits so that an appeal of the final order should bring up the court's denial of the Rose children's fee request. Though attorneys' fee awards are usually collateral to a case's substantive merits, *see, e.g., First Tennessee Bank Nat'l Ass'n v. Mortensen,* 2013 Ark. App. 45, at 2, 2013 WL 361079, this case strikes me as an acceptable, narrow exception to the general rule.

Not only do I see attorney's fees being a potential remedy in the case given Ruth's breach of one or more fiduciary duties, but the children filed a timely postorder motion that challenged the final order in multiple ways and asked for fees and costs again. That motion was deemed denied and expressly mentioned in the notice of appeal.

I would reverse the circuit court's March 2012 order and remand for further proceedings consistent with this dissent.