SLIP OPINION

Cite as 2015 Ark. App. 41

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–14–87

| | |
|---|---|
| DAREN CASON<br><br>APPELLANT<br><br>V.<br><br><br>GLADYS LAMBERT and LEONE K. HENDRICKSON, as personal representatives of the Estate of Marie Eackles, Deceased, and UNION BANK & TRUST COMPANY, as Trustee of the Eackles Family Trust<br><br>APPELLEES | Opinion Delivered JANUARY 28, 2015<br><br>APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. CV–2010-144-4]<br><br>HONORABLE DON GLOVER, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

This case requires us to construe a trust agreement in which Marie Eackles, one of the two settlors of a revocable trust, amended the trust after the death of the other settlor, her husband Donald Eackles. Our review encompasses whether the trial court erred (1) by finding that Marie had the power to amend the trust after the death of her husband; (2) in its interpretation of the trust and resultant distribution; and (3) by awarding attorney's fees. Finding no error, we affirm.

### I. *Facts*

J. Donald Eackles and A. Marie Eackles were husband and wife. In 1995, while living in California, they created and funded the Eackles Family Trust. After the creation and funding of the trust, Donald and Marie used trust assets to purchase a house in Monticello,

Arkansas. The warranty deed for that house was titled in their personal names as "J. Donald Eackles and A. Marie Eackles." The house in Monticello was never deeded to the trust. Donald and Marie amended the trust several times during their joint lifetimes with the final joint amendment of the trust occurring on March 14, 2000. At that time, they each executed a will.

Pursuant to the terms of the trust, Donald and Marie served as co-trustees during their joint lifetimes, and California law governed. The status of co-trustees terminated upon the death of either Donald or Marie. Upon the death of the first spouse, the trust provided that the surviving spouse became the sole trustee and also provided that the trust assets would be divided into two trusts, Trust A and Trust B. Trust A would consist of the separate property of the surviving spouse and one-half of the community property. Trust B would consist of the separate property of the deceased spouse and one-half of the community property. Upon the death of the surviving spouse, Daren Cason, Marie's nephew and the appellant, was named as the successor trustee and was a beneficiary of the trust.

Donald died in October 2002. Upon his death, Marie continued to serve as trustee under the trust. In that capacity, she did not divide the trust proceeds into the two separate trusts, Trust A and Trust B. After her husband's death, Marie moved to Arkansas and determined that she wanted to further amend the Eackles Family Trust. On March 5, 2004, she executed the following documents: (1) Power of Appointment; (2) Amendment to Eackles Family Trust; and (3) Last Will and Testament of A. Marie Eackles. The Power of Appointment expressly states that A. Marie Eackles is executing the same pursuant to power

granted to her by the terms of the trust and that she appointed to her estate all of the property over which she had the power of appointment, including principal and undistributed income in Trust A and principal and undistributed income in Trust B of the Eackles Family Trust. Marie's amendment made the following changes: (1) appointed Union Bank & Trust Company as Successor Trustee; (2) changed the choice of law from California to Arkansas; and, most notably, (3) disinherited Daren Cason and made other changes to the distribution schemes of Trust A and Trust B.

Marie died in June 2008. Pursuant to the 2004 trust amendments executed by Marie, Union Bank & Trust Company began to serve as successor trustee. As successor trustee, it was charged with distributing trust assets. In fulfilling this duty, Union Bank & Trust Company concluded that Marie had the authority to alter the provisions of Trust A but not Trust B. It employed a certified public accountant to perform an audit necessary to determine the valuation of Trust A and Trust B. The accountant concluded that Trust A was composed of 66.9% of the total trust assets and Trust B was composed of 33.1% of the total trust assets. Following the audit, Trust A and Trust B were funded in 2010.

Union Bank & Trust Company filed a petition in the Drew County Circuit Court seeking a declaratory judgment as to the appropriate distribution of trust assets. Daren Cason responded and objected to the petition and proposed distribution. He also filed a counterclaim alleging that Union Bank & Trust Company breached its fiduciary duty to allocate and protect trust assets.

Following a trial and posttrial briefing by the parties, the trial court concluded that (1) Union Bank & Trust Company was the lawfully constituted Successor Trustee; (2) Arkansas law applied; (3) the house located in Monticello, Arkansas, was not a trust asset; (4) Marie had the power to appoint and otherwise modify the provisions of Trust A, and those assets would go to her decedent's estate; (5) Marie did not have the authority to modify or appoint in Trust B; (6) Trust A was composed of 66.9% of the trust and Trust B was composed of 33.1% of the trust; and (7) the Barton Law Firm was entitled to $18,621.70 in attorney's fees for its services as legal counsel for Union Bank & Trust Company. The court ordered distribution to be made in accordance with this ruling. As such, Daren Cason stood to inherit a portion of the trust assets but a much smaller portion than he would have originally inherited. Daren Cason appealed the trial court's order.

## II. *Standard of Review*

The exclusive jurisdiction in cases involving trusts, and the construction, interpretation, and operation of trusts are matters within the jurisdiction of the courts of equity. *Rose v. Rose*, 2013 Ark. App. 256, 427 S.W.3d 698; *Winchel v. Craig*, 55 Ark. App. 373, 934 S.W.2d 946 (1996). Arkansas appellate courts have traditionally reviewed matters that sounded in equity de novo on the record with respect to factual and legal questions. *Rose, supra*; *In re Ruby G. Owen Trust*, 2012 Ark. App. 381, 418 S.W.3d 421. A finding by a circuit court in an equity case will not be reversed unless it was clearly erroneous. *Id.*

SLIP OPINION

III. *Amendment of the Trust*

The appellant contends that the trial court erred in finding that Marie had the authority to amend Trust A after her husband's death. He raises two distinct arguments in support of his position: (1) because community property was involved, the trust could only be amended by joint action; and (2) that joint action was required for amendment because the parties executed reciprocal wills.

A. Community Property

The Eackles Family Trust was executed in California, a community-property state. Arkansas is not a community-property state but does address community property statutorily. Arkansas Code Annotated section 28-73-602(b)(1) states that "if a revocable trust is created or funded by more than one (1) settlor, to the extent the trust consists of community property, the trust . . . may be amended only by joint action of both spouses." This statutory section controls the Eackles Family Trust. Pursuant to this statutory provision, the appellant argues that Marie was prohibited from unilaterally amending the trust after Donald's death. However, there is an exception to this general statutory rule. When the terms of the trust express a clear indication of a contrary intent, the terms of the trust prevail. Ark. Code Ann. § 28-73-1106(a).

Here, the terms of the trust clearly indicate a contrary intent of the settlors. Section 2.02 of the trust authorizes the surviving spouse to amend Trust A by providing that

> Grantors may, at any time in their joint lifetimes, amend or alter any of the terms of this Trust by an instrument in writing signed by both Grantors and delivered to the Trustee. Upon the death of the first Grantor survived by the Surviving Grantor, the Surviving Grantor may amend or alter any of the terms of Trust A.

5

SLIP OPINION

The terms of the trust prevail over the general provisions found in Arkansas Code Annotated section 28-73-602(b)(1). Ark. Code Ann. § 28-73-1106(a). We find no error in the trial court's conclusion that even though community property was involved, Marie had the authority to amend the trust after her husband's death.

### B. Reciprocal Wills

Alternatively, the appellant contends that it was error for the trial court to conclude that Marie had the power to amend her will and trust after Donald's death because their wills were reciprocal. Arkansas recognizes reciprocal wills as a legitimate estate-planning device to effect the intent of a married couple to dispose of collective property. *Gregory v. Estate of Gregory*, 315 Ark. 187, 191, 866 S.W.2d 379, 382 (1993). The execution of reciprocal wills generally prevents amendment after the death of one spouse. *Dotson v. Dotson*, 2009 Ark. App. 819, 372 S.W.3d 398.

The execution of reciprocal wills is governed by Arkansas Code Annotated section 28-24-101(b). This statute requires that contracts to make or not to revoke a will be proven by a writing or an express reference within the will. While terms of the wills executed by Donald and Marie were virtually identical, there is no writing evidencing a contract not to revoke a will as required by Arkansas Code Annotated section 28-24-101(b). Without written evidence of a contract not to revoke, we cannot conclude that Donald and Marie executed reciprocal wills.

When determining whether reciprocal wills and trusts were created, the principal rule is to ascertain the intent of the settlor. *Bailey v. Delta Trust & Bank*, 359 Ark. 424, 432, 198

S.W.3d 506, 512–13 (2004). A court must examine the four corners of the instrument, considering its language and if possible to give meaning to all of its provisions. *Id.* A review of the wills and the trust indicates that the parties did not intend for the trust to be irrevocable. As discussed previously, section 2.02 of the trust contemplated that the surviving spouse could amend or alter the terms of Trust A. This further negates the appellant's argument that reciprocal wills were created.

## IV. *Interpretation and Distribution of the Trust*

To support his contention that the trial court erred in interpreting and distributing the trust, the appellant argues (1) that the house in Monticello should have been determined to be part of the trust estate and (2) that Marie waived her interest in any trust property when she failed to allocate the trust property within six months of Donald's death.

## A. The House

The trial court determined that the house located in Monticello, Arkansas, was not a trust asset. In 2002, Marie and Donald Eackles used trust assets to purchase the house, and the warranty deed for the house listed the owners as J. Donald Eackles and A. Marie Eackles. There was no mention of the Eackles Family Trust on the deed.

We need only consider the face of the warranty deed in determining whether the house is trust property. A presumption arises that a deed is what it purports to be. *Smith v. Eisen*, 97 Ark. App. 130, 245 S.W.3d 160 (2006). Appellate courts should not resort to rules of construction when a deed is clear and contains no ambiguities. *Ark. Presbytery v. Hudson*, 344 Ark. 332, 40 S.W.3d 301 (2001). Here, the warranty deed was in the Eackleses' personal

SLIP OPINION

names. As husband and wife, they took title in the house as tenants by the entirety, and the house became Marie's sole property following Donald's death. *Foster v. Schmeideskamp*, 260 Ark. 898, 545 S.W.2d 624 (1977).

Furthermore, the trust documents show that they contemplated amending the terms of the trust and the assets in the trust. Section 1.012 of the trust gave Donald and Marie the authority to withdraw money from the trust for any reason, and Section 2.02 granted them the authority to alter or amend any of the terms of the trust. These sections show that Donald and Marie clearly intended to allow modifications to the trust and the trust assets during their joint lifetimes.

## B. Allocation of Funds

It is undisputed that Marie did not divide the property into Trust A and Trust B within six months of Donald's death. The appellant contends that the terms of the trust required Marie to do so and that her failure to comply with this provision of the trust resulted in her waiving any claim to the property.

When construing a trust, the principal rule is to ascertain the intent of the settlor. *Bailey*, *supra*. A court must examine the four corners of the instrument, considering its language and if possible to give meaning to all of its provisions. *Id*.

In support of his position, the appellant cites section 1.025 of the trust which reads as follows:

> Whenever the Trustee is directed to make a distribution of Trust assets or a division of Trust assets into separate Trust or shares on the death of a Grantor, the Trustee may, in the Trustee's absolute discretion, defer such distribution or division until six months after the Grantor's death.

While this particular section seems to support the appellant's position, the law requires us to attempt to ascertain the intent of the settlor by considering the trust provisions as a whole. Section 7.02 also concerns the division of trust assets and provides,

> There need be no physical segregation or division of the various Trusts except as segregation or division may be required by the termination of any of the Trusts, but the Trustee shall keep separate accounts for the different undivided Trusts.

Reading these sections of the trust together, we conclude that Marie was not required to divide the assets for Trust A and Trust B during her lifetime so long as an accounting of the assets that belonged in each trust could be performed. The interpretation that the appellant suggests would render the language of section 7.02 superfluous. We find no error on this point.

## V. *Attorney's Fees*

Arkansas Code Annotated section 28-48-108(d)(1) authorizes the trial court to award fees for legal services rendered in connection with the administration of the estate, and an award of attorney's fees will not be set aside absent an abuse of discretion. *Calvert v. Estate of Calvert*, 99 Ark. App. 286, 259 S.W.3d 456 (2007).

The appellant argues that the trial court's award of $18,621.70 to the Barton Law Firm for its services rendered to Union Bank & Trust Company was in error. He asserts that Union Bank & Trust Company was litigating to enforce the amended trust, which only benefited Marie and not the other beneficiaries, and because it was working to Marie's benefit, it should not be awarded attorney's fees.

We disagree. As trustee, Union Bank & Trust Company had an obligation to properly distribute the assets of the trusts, and from the beginning, it was apparent that there was a dispute regarding distribution that would require adjudication by a court. Union Bank & Trust Company litigated whether certain items of real property were trust assets and also the efficacy of the trust documents created by Marie Eackles after her husband's death. In addition, it also successfully defended the trust against a $1 million counterclaim for damages filed by the appellant and defended the trust against his nearly $70,000 in expense claims. The trial court ultimately awarded him only $551.17 for his claims. We find that it was within the trial court's discretion to award attorney's fees to Union Bank & Trust Company for services that were rendered in connection with the administration of this estate.

## VI. *Conclusion*

Having considered each of the arguments presented by the appellant, we find no error and affirm the decision of the trial court in its entirety.

Affirmed.

VAUGHT and HOOFMAN, JJ., agree.

*Robert S. Tschiemer*, for appellant.

*Walter Whit Barton*, for appellee.