Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/21/2022 09:06 AM CDT

In re Charles and Patricia Masek Family Trust.
Barry Masek, individually and as Administrator
of the Estate of Patricia Masek, deceased,
appellee, v. Mark Masek and Dianne
Yahiro, appellants.

___ N.W.2d ___

Filed July 29, 2022.    No. S-21-552.

1. **Trusts: Equity: Appeal and Error.** Trust administration matters are reviewed for error appearing on the record, absent an equity question or question of law, which are instead reviewed de novo.
2. **Judgments: Appeal and Error.** For errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.
4. **Trusts: Liability.** A beneficiary is not personally liable to a trust unless an exception applies. One such exception includes instances where the trust suffered a loss resulting from a breach of trust in which the beneficiary participated.
5. **Trusts.** A beneficiary participates in a breach of trust if the beneficiary performs, or joins in performing, an act the beneficiary knows is a breach. Mere knowledge of, or consent to, the breach, without more, is insufficient to constitute participation.
6. **Trusts: Liability.** A person is a de facto trustee, and can be liable for breach, where the person has (1) assumed the office of trustee under a color of right or title and (2) exercised the duties of the office.

Appeal from the County Court for Gage County: Steven B. Timm and Linda A. Bauer, Judges. Reversed and remanded for further proceedings.

Matt Catlett, of Law Office of Matt Catlett, for appellants.

Douglas W. Ruge II for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

In October 2020, the Gage County Court found that Mark Masek and Dianne Yahiro (Dianne), appellants, had committed breach of trust and had taken trust assets, and it ordered damages against appellants by default judgment. Appellants filed a special appearance and motion for new trial on the issues of lack of personal jurisdiction, insufficiency of process, and insufficiency of service of process under Neb. Rev. Stat. § 25-516.01 (Cum. Supp. 2020). Appellants additionally alleged the eight enumerated grounds for new trial as provided by Neb. Rev. Stat. § 25-1142 (Reissue 2016).

On June 7, 2021, the county court denied appellants' motion, finding that proper notice had been given to them; that the court had personal jurisdiction over them; and that, in the alternative, appellants had otherwise waived the right to challenge personal jurisdiction by requesting a new trial. The county court also found that appellants did not establish any statutory grounds for a new trial under § 25-1142. Appellants filed an appeal, at which time we moved this case to our docket.

Because the county court did not explain its basis for finding appellants liable for breach of trust, we reverse, and remand for further proceedings.

## FACTUAL BACKGROUND

Charles and Patricia Masek created the Charles and Patricia Masek Family Trust in 1993 (Family Trust). The trust named Charles and Patricia as initial cotrustees and provided that upon death, resignation, or disability of either grantor, the remaining grantor would become the sole trustee. The Family

Trust also provided that upon the death of either grantor, the trust would become irrevocable and any assets placed in the trust would be divided between a marital share and a family share. Upon the death of both grantors, the family share would consist of all assets remaining in the trust estate. The Family Trust declared that Charles and Patricia had five living children: Barry Masek, Mark, Dianne, Colleen Masek (now known as Colleen Eames), and Richard Masek. The Family Trust named three of the living children—Barry, Mark, and Dianne—as successor cotrustees.

Upon Charles' death in 2000, Patricia became the sole trustee, the Family Trust became irrevocable, and the property within the trust estate was divided into the marital and family shares. Patricia registered the Family Trust in Gage County, Nebraska, in November 2000 and petitioned the court to amend the Family Trust to provide that all five of her children be cotrustees. All five children signed their approval of this amendment, which was approved by the court in December 2000. That same month, Patricia granted an interest in several hundred acres of farmland to her children. The Masek children then formed the Masek Children's Trust (Children's Trust) and placed the land into the Children's Trust. The Children's Trust specified that in the event the Family Trust was depleted prior to Patricia's death, the trustee of the Children's Trust could draw upon trust assets to care for and benefit Patricia.

Around 2014, appellants moved Patricia and Richard, who had special needs and could not live on his own, to Illinois to live with Dianne. By this time, Patricia had reportedly been diagnosed with progressive dementia and Alzheimer's disease. According to siblings Barry and Colleen, appellants moved Patricia and Richard without first informing Barry and Colleen of the move.

In October 2015, Colleen filed a petition to remove Patricia as trustee of the Family Trust, alleging that Patricia was unable to administer the trust effectively. Colleen further asked the court to remove all successor cotrustees and appoint a qualified

corporate fiduciary as successor trustee. Colleen stated that she believed it would be impossible for all currently named successor cotrustees to agree due to a separate and then-pending action regarding the Children's Trust.

In May 2016, the court found that the interests of justice did not require court intervention; that the terms of the trust prevailed, which required certain procedures be done to find Patricia unfit to be trustee; and that such terms had not been fulfilled. As a result, Patricia was not removed as trustee.

Within a year after Patricia and Richard were moved to Illinois, the relationship between Barry and Colleen on one hand and appellants on the other, which had not been harmonious to begin with, further deteriorated. Barry and Colleen claim they were barred from communicating with Patricia and Richard, despite their best efforts, for a period of almost 5 years. Colleen filed an action for guardianship in Illinois to locate Patricia. Despite an Illinois court order demanding that Patricia be produced, Patricia was not produced and the court issued a warrant to locate Patricia.

In December 2019, Barry and Colleen filed a joint petition for accounting in Gage County, alleging that they had not received an accounting from Patricia as trustee since January 2014. Hearings regarding this petition were scheduled for March 12, 2020. A copy of this petition and the notice of hearing was emailed to Brian Koerwitz as counsel for Dianne, Mark, and Richard and to Christopher Bartling as counsel for Patricia. Koerwitz filed a motion to withdraw as counsel, which was granted on January 13.

On February 28, 2020, Bartling filed a motion to withdraw as counsel for Patricia. Bartling stated that he had attempted to contact Patricia without success; that he had not directly communicated with Patricia since 2016; and that Mark, as durable power of attorney for Patricia, had requested Bartling withdraw as counsel.

In early March 2020, Barry was contacted by an Illinois police department. Richard had died on March 1, and Dianne

and her husband had brought Richard's body to a crematory so that Patricia could give consent to cremate Richard. The crematory contacted the police, who then contacted Barry and Colleen.

On March 6, 2020, an Illinois circuit court issued an order in which it found an emergency basis existed for the appointment of a temporary guardian for the estate and person of Patricia for reasons including, but not limited to, concerns expressed by a detective about Patricia's safety, Dianne's failure to appear or produce Patricia despite court order, Dianne's failure to present Patricia for a visit with her guardian ad litem, and the fact that Patricia was hospitalized with signs of bruising. The Illinois court then named Barry as temporary guardian for a duration of 60 days, which would expire May 5.

In her response to Bartling's motion to withdraw as counsel, Colleen notified the Gage County Court of these Illinois proceedings. Colleen alleged that Mark's power of attorney for Patricia had been suspended by the Illinois court.

At the March 12, 2020, hearing on Colleen's petition, Bartling informed the court that he had been unable to contact Patricia by any means. Colleen's counsel responded that Bartling should not be allowed to withdraw at that time, due to the ongoing guardianship proceedings in Illinois, and provided further detail to the court of recent events. The county court took the matter under advisement and set a further hearing on the matter of withdrawal for May 18.

Also during this March 12, 2020, hearing, Benjamin Murray, counsel for appellants in litigation concerning the Children's Trust, was present in the courtroom and was addressed by the court. When addressed, Murray specified that he was "not on the [F]amily [T]rust," and only "on the [C]hildren's [T]rust." A separate hearing concerning the Children's Trust began immediately after the conclusion of this hearing.

On May 11, 2020, Barry filed a motion to amend the pleadings. On May 18, Bartling was granted withdrawal after the court noted that a guardian had been appointed for Patricia,

apparently referring to the Illinois proceedings. However, documents in the record indicate that Patricia did not have a guardian as of May 5.

In June 2020, the court entered a proposed order in which it granted Barry's motion to amend. Barry then filed on June 24 the "Barry M. Masek Amended Petition for Removal of Trustee(s), Surcharge/Damages for Injunctive Relief, Declaring Amendments Void and Accounting." This amended petition alleged that appellants had blocked access to Patricia and the records of the Family Trust; had amended the Family Trust and appointed one or more of themselves as trustee; and had utilized trust assets for themselves, misappropriated trust assets, or disposed of assets of the Family Trust contrary to its terms.

The amended petition prayed for damages and attorney fees pursuant to the Nebraska Uniform Trust Code (NUTC); removal of appellants as trustees; an accounting of the trust's activities and a surcharge judgment against appellants for any misappropriations; an order declaring null and void any amendments to the Family Trust since 2010, including any appointment of trustees other than Patricia; imposition of a lien or constructive trust on the assets of the Family Trust; and injunctive relief against appellants to prevent them from acting as trustees, managing trust affairs, or misappropriating trust assets.

On the same day the amended petition was filed, Barry filed a praecipe for service requesting the court to issue a summons for personal or residential service on Dianne at her residence in Illinois and on Mark at his residence in California. The record does not indicate whether the summonses were issued.

On July 2, 2020, the same Illinois court that previously named Barry as temporary guardian for Patricia entered a new order appointing Barry as a perpetual plenary guardian and conservator for Patricia.

An evidentiary hearing regarding the Family Trust was scheduled for September 21, 2020. A notice of this hearing

was mailed to Mark at his California address and emailed to Murray. Douglas Ruge, counsel for Barry, filed an affidavit of service with the court wherein he affirmed that appellants were mailed a copy of the amended petition at their residential addresses by certified and first-class postage prepaid mail on August 11. Ruge affirmed that these addresses were recorded in court documents and had been verified as appellants' residential addresses. Ruge also affirmed that Murray was emailed a copy which was not returned as undeliverable.

Mail was addressed to Dianne at "4539 Lee Avenue" instead of "4549 Lee Avenue." Though the correct address was written over the incorrect address in an attempt to resolve the error, the correction made the final number illegible. This mail was returned as "Not Deliverable as Addressed." Other mail sent to Dianne, properly addressed to "4549 Lee Avenue," was not returned as undeliverable. Certified mail addressed to Mark at "4856 Bernal Ave" included a return receipt, which was returned unsigned, but otherwise did not indicate that the mailing was undeliverable. "USPS Tracking" for this certified mail shows that the item was delivered to this address and left with an individual.

At the evidentiary hearing on September 21, 2020, Barry and Colleen were present with their attorneys. An attorney, who was the trustee of the Children's Trust, had been appointed as guardian ad litem for Patricia and was present at the hearing in that capacity. Appellants were not present, nor were they represented by counsel.

Ruge submitted evidence showing that he had mailed notice to all parties and that notice of this hearing was given to Murray. Specifically, Ruge provided email correspondence between Murray and himself regarding Patricia, where Ruge inquired about the Family Trust proceedings and Murray stated, "I am not representing [appellants] in that case and I do not know if they intend to retain counsel. I'll shoot them an email and see if I can get you an answer."

Barry then testified, producing statements and other financial documents detailing how assets held by the Family Trust had been depleted between 2015 and 2021. He explained that the assets were withdrawn either by Patricia for the benefit of appellants or by appellants on behalf of Patricia as her power of attorney. Barry also testified about the circumstances of Patricia's move to live with Dianne, about Richard's death and the guardianship proceedings that had occurred in Illinois shortly thereafter, and about his experience as a certified public accountant and how that experience helped him collect information and trace trust assets after they were withdrawn from a trust account.

After this evidentiary hearing, the county court filed an order on October 23, 2020. An order nunc pro tunc was entered on October 29, superseding and replacing the original order while retaining the original effective date of October 23. A comparison of the original and nunc pro tunc orders indicates that the body of the order was unchanged, but that the certificate of service removed Richard as a party receiving notice. As noted elsewhere, Richard had died months earlier.

In its October 2020 order, the court found that proper notice was given to the parties; that the court had personal and subject matter jurisdiction over the parties and the case; that appellants began exercising control over the Family Trust accounts in 2015; and that large amounts of money totaling $1,276,858 were taken out of these accounts beginning in 2015, including $7,000 monthly payments to Dianne, payments for the benefit of Dianne's children that other grandchildren did not receive, and wire transfers to Panama where Dianne had been traveling. By the time of the hearing, the assets of the Family Trust had been depleted and Patricia's only resources to support herself were her Social Security and teachers' retirement payments.

The court then granted the amended petition with respect to the surcharge and damages causes of action, entering judgment against appellants jointly and severally for $1,276,858

plus costs in favor of Barry as guardian and conservator for Patricia, as well as trustee and beneficiary of the Family Trust. The court also awarded attorney fees to Barry in the amount of $10,306.25. The court denied relief for the other causes of action alleged in the amended petition, finding that the accounting cause of action was covered by the ruling for the damages and surcharge actions, there was no evidence of improper substitution of trustees, and injunctive relief was unnecessary because there was no evidence that the Family Trust had been improperly amended.

Four days after entry of this order, on November 2, 2020, appellants filed a motion requesting a new trial for lack of personal jurisdiction, insufficiency of process, and insufficiency of service of process. The motion then listed eight enumerated grounds for a new trial as set forth in § 25-1142, without specifically alleging facts under any of those subsections. This motion was filed by Murray, which signified his first official appearance in the Family Trust proceedings as counsel for appellants.

In April 2021, Barry filed an application for revivor of judgment, in which he notified the court that Patricia had died and that he had been named administrator of Patricia's estate. Barry asked that the court revive the October judgment in Barry's name as administrator of Patricia's estate. The court thereafter granted Barry's request and revived the judgment "in [Barry's] name as Administrator and Representative for the Estate of Patricia Masek, deceased."

In June 2021, the court denied appellants' motion. The court found that in regard to the service issues, all parties had been subject to the jurisdiction of the court for the past 20 years pursuant to the registration of the Family Trust, characterizing appellants' arguments regarding notice and jurisdiction as "disingenuous." The court also found it was apparent from the affidavits of service that appellants had actual notice of the trial and that Murray had received notice and had represented appellants in the concurrent Children's Trust litigation. The

court concluded that notice and jurisdiction were proper but, alternatively, concluded that jurisdiction had been waived by appellants' filing a motion and that appellants had failed to establish statutory grounds for granting such new trial.

Appellants appealed from the denial of their motion, and we moved this case to our docket.

## ASSIGNMENTS OF ERROR

Appellants assign that the county court (1) lacked subject matter jurisdiction because Patricia was an indispensable party but was not served and did not voluntarily appear; (2) erred in denying their joint "Special Appearance and Motion for New Trial" because process and service of process were insufficient; (3) erred in denying their joint "Special Appearance and Motion for New Trial" because the county court lacked personal jurisdiction over them; (4) lacked subject matter jurisdiction over the amended petition because Colleen did not sign it; (5) assuming the amended petition was properly characterized as one brought under the NUTC to remedy a breach of trust by appellants, issued a judgment contrary to its own findings; (6) erred in entering judgment in favor of "Barry . . . as Guardian and Conservator for Patricia . . . , Trustee and Beneficiary of the Charles and Patricia Masek Family Trust"; and (7) entered a judgment which was not sustained by the evidence.

## STANDARD OF REVIEW

[1,2] Trust administration matters are reviewed for error appearing on the record, absent an equity question or question of law, which are instead reviewed de novo.[1] For errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[2]

---

[1] See, *In re William Zutavern Revocable Trust*, 309 Neb. 542, 961 N.W.2d 807 (2021); *In re Trust of Shire*, 299 Neb. 25, 907 N.W.2d 263 (2018).

[2] See *In re William Zutavern Revocable Trust, supra* note 1.

[3] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[3]

## ANALYSIS

### Jurisdiction, Notice, and Governing Rules

On appeal, appellants contend that (1) Patricia was not served with proper notice of the proceedings and, as an indispensable party to this action as trustee, the county court was deprived of subject matter jurisdiction; (2) their motion should be treated as a motion to vacate a default judgment and that the amended petition should be treated as a civil complaint for conversion of trust property, such that the rules of civil procedure would govern in place of the NUTC; (3) the county court lacked personal jurisdiction over appellants because process and service of process were insufficient and because minimum contacts did not exist to warrant application of Nebraska's long-arm statute; (4) the county court lacked subject matter jurisdiction because Colleen did not sign the amended petition and because the Family Trust is not valid where the documents which created and amended the trust do not include a description of its subject matter or a method to ascertain its subject matter; (5) the county court erred in entering judgment in favor of Barry as guardian and conservator of Patricia because the trust itself would be entitled to judgment; and (6) the county court's judgment was not sustained by the evidence because the evidence "concerned only Patricia's personal funds, not Trust funds."[4]

We have considered each of these issues and find each is without merit. However, we find merit to appellants' fifth assigned error, that the county court issued a judgment contrary to its own findings, and now turn to that argument.

---

[3] *Chaney v. Evnen*, 307 Neb. 512, 949 N.W.2d 761 (2020).

[4] Brief for appellants at 38.

### Findings in Support of Judgment

Appellants contend that the county court's judgment was contrary to that court's own findings because the court found that Barry had met his burden of proof for the claims regarding damages and surcharge for breach of trust, but also found "[t]here was no evidence presented that there had been any improper substitution of trustees" or that "the Trust had been improperly amended," indicating that appellants were not trustees. Because appellants were not trustees, they assert they cannot be held liable for breach of trust.

Under the NUTC, breach of trust is defined as a "violation by a trustee of a duty the trustee owes to a beneficiary,"[5] and claims can be brought against that trustee for any actions constituting a breach.[6] The NUTC does not, however, indicate whether a beneficiary can be held liable for breach of trust.

[4,5] According to the Restatement (Third) of Trusts, which has been previously utilized to supplement or interpret the NUTC,[7] a beneficiary is not personally liable to a trust unless an exception applies.[8] One such exception includes instances where "the trust suffered a loss resulting from a breach of trust in which the beneficiary participated."[9] Commentary further provides:

> A beneficiary owes a duty to the other beneficiaries not to participate in a breach of trust. If a beneficiary participates in a breach of trust, causing a loss to the trust . . . , the beneficiary is personally liable to the trust for all or part of the loss, as appropriate. . . .
>
> Certainly, the beneficiary participates in a breach of trust if the beneficiary performs, or joins in performing,

---

[5] Neb. Rev. Stat. § 30-3890 (Reissue 2016).

[6] See, *id.*; Neb. Rev. Stat. § 30-3891 (Reissue 2016).

[7] See, *In re William Zutavern Revocable Trust, supra* note 1; *In re Trust of Shire, supra* note 1.

[8] See Restatement (Third) of Trusts § 104 (2012).

[9] *Id.* at 90.

an act the beneficiary knows is a breach. . . . For example, a beneficiary has participated in a breach of trust if the beneficiary induced the misconduct knowing that it would or might be a breach of trust. However, mere knowledge of, or consent to, the breach, without more, is insufficient to constitute participation (though the beneficiary may be liable under the law of unjust enrichment for any resulting benefit received . . .).[10]

While the NUTC does not exclude beneficiary liability, neither does it provide a framework for analyzing beneficiary liability; hence, we find the Restatement's analytical framework instructive for purposes of examining appellants' actions in terms of the purported breaches of trust. Under this framework, it is possible that appellants committed breach of trust by participating in a breach by Patricia or, more specifically, by inducing Patricia to commit breach while she was in their care and control.

[6] Alternatively, Barry contends that appellants acted as de facto trustees when they directed Patricia to withdraw funds from the trust for their benefit. The NUTC does not define de facto trustees, and we have not previously recognized de facto trustees as liable for breach of trust. However, courts in other jurisdictions have considered de facto trustee status in both corporate and trust law contexts and have concluded that a person is a de facto trustee, and can be liable for breach, where the person has (1) assumed the office of trustee under a color of right or title and (2) exercised the duties of the office.[11] While these factors do not appear to apply to the claims raised herein as none of Barry's arguments assert that appellants assumed an office under color of right or title, it is

---

[10] *Id.*, comment *f.* at 91.

[11] See, *In re Bankers Trust*, 403 F.2d 16 (7th Cir. 1968); *Haynes v. Transamerica Corp.*, No. 16-cv-02934-KLM, 2018 WL 487841 (D. Colo. Jan. 18, 2018); *Rose v. Rose*, 2013 Ark. App. 256, 427 S.W.3d 698 (2013); *In re Irrevocable Trust of McKean*, 144 Wash. App. 333, 183 P.3d 317 (2008).

possible that the county court entered judgment against appellants under this theory.

Ultimately, the county court found that appellants did not improperly substitute trustees or improperly amend the trust, and yet, it also found appellants liable for the damages and surcharge claims for breach of trust. While it is possible for this court to speculate as to which theories of liability may apply, it is not possible for this court to determine with clarity which theory was utilized by the county court below. For that reason, we cannot conclude whether the decision is or is not sustained by sufficient evidence such that a new trial would be warranted under § 25-1142(6). What we can determine is that the findings of the county court are in conflict with the relief granted and do not conform to the law.

Accordingly, we reverse, and remand to the county court for further proceedings consistent with this opinion, including, but not limited to, conducting a hearing wherein the parties would have the opportunity to present evidence or arguments concerning appellants' liability to the trust either as de facto trustees or by participating in a breach of trust committed by Patricia, or by inducing Patricia to commit breach while she was in their care and control.

## CONCLUSION

While a majority of appellants' claims are without merit, we conclude that their argument regarding the county court's order being contrary to its own findings may have merit. However, it is not possible for this court to make such determination based on the record because of the conflict between the county court's findings and the relief granted. We therefore reverse, and remand to the county court for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.